UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Leslie Rakip</u>,
     Claimant

     v.                             Civil No. 11-cv-323-SM
                                     Opinion No. 2012 DNH 093

<u>Michael J. Astrue, Commissioner</u>,
<u>Social Security Administration</u>
     Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Leslie Rakip, moves to reverse the Commissioner's decision denying her applications for Social Security Disability Insurance Benefits and Supplemental Security Income Benefits, under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 423 and 1381-1383c (the "Act").  The Commissioner objects and moves for an order affirming his decision.

For the reasons discussed below, claimant's motion is denied, and the Commissioner's motion is granted.

**Factual Background**

I.   <u>Procedural History</u>.

In 2007, claimant filed applications for Disability
Insurance Benefits and Supplemental Security Income Benefits,
alleging that she had been unable to work since January 1, 1999.
Her claims were denied, and she requested a hearing before an
Administrative Law Judge ("ALJ").  After reviewing all the record
evidence, the ALJ issued a partially favorable ruling, concluding
that claimant had been disabled since February 18, 2008.
Claimant appealed to this court, seeking a determination that she
was disabled approximately nine years earlier, on January 1,
1999.  Subsequently, the Commissioner filed an assented-to motion
to remand the matter to the ALJ for further evaluation of
claimant's mental impairments, in accordance with the special
technique described in 20 C.F.R. §§ 404.1520a and 416.920a.  The
court (Laplante, C.J.) granted that motion.  <u>See</u> <u>Rakip v.</u>
<u>Commissioner</u>, No. 09-cv-380-JL.  The Decision Review Board
vacated the ALJ's (partially favorable) decision in its entirety
and remanded the matter to the ALJ for further proceedings.

Accordingly, on November 30, 2010, the ALJ conducted another
hearing.  Claimant (accompanied by her attorney), an impartial
vocational expert, and an impartial medical expert appeared and

2

testified.  Approximately two months later, the ALJ issued a
decision denying claimant's applications for benefits.  Once
again, claimant filed a timely appeal to this court, followed by
a "Motion for Order Reversing Decision of the Commissioner"
(document no. 10).  In response, the Commissioner filed a "Motion
for Order Affirming the Decision of the Commissioner" (document
no. 11).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

    Pursuant to this court's Local Rule 9.1(d), the parties have
submitted a statement of stipulated facts which, because it is
part of the court's record (document no. 12), need not be
recounted in this opinion.  Those facts relevant to the
disposition of this matter are discussed as appropriate.

**Standard of Review**

I.  "<u>Substantial Evidence" and Deferential Review</u>.

    Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  Factual findings and credibility
determinations made by the Commissioner are conclusive if

3

supported by substantial evidence.  See 42 U.S.C. §§ 405(g) and 1383(c)(3).  See also Irlanda Ortiz v. Secretary of Health & Human Services, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).  Consequently, provided the ALJ's findings are properly supported, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).

II.  The Parties' Respective Burdens.

An individual seeking Social Security benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically

4

determinable physical or mental impairment which can be expected
to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months." 42 U.S.C.
§ 423(d)(1)(A). See also 42 U.S.C. § 1382c(a)(3). The Act
places a heavy initial burden on the claimant to establish the
existence of a disabling impairment. See Bowen v. Yuckert, 482
U.S. 137, 146-47 (1987); Santiago v. Secretary of Health & Human
Services, 944 F.2d 1, 5 (1st Cir. 1991). To satisfy that burden,
the claimant must prove, by a preponderance of the evidence, that
her impairment prevents her from performing her former type of
work. See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985);
Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982). If
the claimant demonstrates an inability to perform her previous
work, the burden shifts to the Commissioner to show that there
are other jobs in the national economy that she can perform. See
Vazquez v. Secretary of Health & Human Services, 683 F.2d 1, 2
(1st Cir. 1982). See also 20 C.F.R. §§ 404.1512(g) and
416.912(g).

In assessing a disability claim, the Commissioner considers
both objective and subjective factors, including: (1) objective
medical facts; (2) the claimant's subjective claims of pain and
disability, as supported by the testimony of the claimant or

5

other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

    With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

## Discussion

I.  Background - The ALJ's Findings.

    In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  Accordingly, he first determined that

claimant had not been engaged in substantial gainful employment since her alleged onset of disability: January 1, 1999.  Admin. Rec. at 9.  Next, he concluded that claimant suffers from the following severe impairments: depression and anxiety.  Id. at 10. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Admin. Rec. at 10.  Claimant does not challenge any of those findings.

Next, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels, but with the following non-exertional limitations: the claimant is limited from more than simple routine tasks requiring minimal public contact."  Id. at 12. And, relying upon the testimony of a vocational expert, the ALJ concluded that, notwithstanding claimant's non-exertional limitations, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  Id. at 15. Consequently, the ALJ concluded that claimant was not "disabled," at any time relevant to his decision.

In support of her motion to reverse the decision of the ALJ, claimant advances three arguments: first, that the ALJ failed to give proper weight to the opinions of her treating mental health counselor; second, that the ALJ failed to properly assess her subjective complaints of disabling symptoms; and, finally, that the ALJ's residual functional capacity assessment was not supported by substantial evidence.

II.   The Treating Provider's Opinion.

With regard to her first argument in favor of reversing the ALJ's adverse disability determination, claimant says:

> It is [claimant's] contention that ALJ Klingebiel
> failed to fairly and properly weigh the opinion of the
> [claimant's] treating clinician.  His review of Ms.
> Leppanen Lerner's opinions failed to conform with the
> requirements of the Commissioner's Social Security
> Ruling (SSR) 06-3p and, as such, it cannot stand.

Claimant's memorandum (document no. 10-1) at 7.  The SSR on which claimant relies discusses the difference between "acceptable medical sources" and those health care providers who are not acceptable medical sources, and the weight to which their respective opinions are entitled.

> The distinction between "acceptable medical sources"
> and other health care providers who are not "acceptable
> medical sources" is necessary for three reasons.

8

> First, we need evidence from "acceptable medical
> sources" to establish the existence of a medically
> determinable impairment.  Second, only "acceptable
> medical sources" can give us medical opinions.  Third,
> only "acceptable medical sources" can be considered
> treating sources, whose medical opinions may be
> entitled to controlling weight.

SSR 06-3p, <u>Considering Opinions and Other Evidence from Sources</u>
<u>Who are not "Acceptable Medical Sources" in Disability Claims</u>,
2006 WL 2329939, at *2 (August 9, 2006) (citations omitted).
While the SSR emphasizes that "information from these 'other
sources' cannot establish the existence of a medically
determinable impairment," it acknowledges that such sources "may
provide insight into the severity of the impairment and how it
affects the individual's ability to function." <u>Id</u>.  It also
discusses the factors an ALJ should consider when weighing any
medical opinions, regardless of whether those opinions come from
acceptable or non-acceptable sources, and regardless of whether
they are treating, non-treating, or non-examining sources.  <u>Id</u>.
at *2-4.

Here, the ALJ properly recognized that Ms. Leppanen Lerner
is not an "acceptable medical source."  Admin. Rec. at 14.  Then,
as required by the regulations and SSR 06-3p, he went on to
explain why he afforded her opinions about the severity of

claimant's impairments only "limited weight."   In particular, the
ALJ noted that Ms. Leppanen Lerner's opinions were not well
supported by either her own clinical observations or by other
substantial evidence in the record.   Id.

The ALJ's explanation is well-supported by the testimony of
the medical expert, Dr. Koocher.[1]   Dr. Koocher testified about
claimant's history of mental health treatment, and focused on her
depressive disorder and her anxiety-related disorder.   Based upon
his review of claimant's medical records, he concluded that:

> [W]hat we have is the overall picture [of] a young
> woman who did have significant problems as an
> adolescent, particularly around age 15.   But in the
> past 10 years, the record seems to consistently
> document moderate level rather than severe level of
> impairment, both in the narrative and in the detail
> that's provided in the records.

Admin. Rec. at 45.   He also explained why both Dr. Knight and Ms.
Leppanen Lerner "appear to have misunderstood the social security
criteria," resulting in what Dr. Koocher called "a little bit of

---

[1]    Dr. Gerald Koocher was retained by the Commissioner to
review claimant's medical records, discuss her treatment history,
and opine on her ability to function in the workplace.   He is,
among other things, a Professor of Psychology and Dean of the
School for Health Studies at Simmons College and, since 1981, he
has been a Senior Associate in Psychology at Children's Hospital
in Boston.   Admin. Rec. at 173-78.

incongruity," id. at 43 - that is, their use of medical terms
which overstate (at least in social security context) claimant's
impairments.  Ultimately, Dr. Koocher explained why the medical
evidence of record supports the conclusion that claimant falls
"within the moderate level of impairment."  Id. at 45.[2]

        Having reviewed the administrative record, the court cannot
conclude that the ALJ failed to comply with the requirements of
SSR 06-3p.  He recognized that Ms. Leppanen Lerner is not an
acceptable medical source, but acknowledged (and complied with)
his obligation to provide an explanation for his decision to give
her opinions only limited weight.  And, that decision is more
than adequately supported by both claimant's record of medical
treatment and the expert testimony of Dr. Koocher.

III. Claimant's Subjective Complaints of Disabling Symptoms.

        When determining a claimant's RFC, the ALJ must review the
medical evidence regarding the claimant's physical and/or mental
limitations as well as her own description of those limitations.

---

[2]     Dr. Koocher also pointed out that claimant's medical records
and treatment history were "slightly out of sync with the
checkoffs that were filled out on the RFCs by the treaters.
However, the RFCs don't provide documentation of anything more
than moderate impairment."  Admin. Rec. at 45.

See Manso-Pizarro v. Secretary of Health & Human Services, 76

F.3d 15, 17 (1st Cir. 1996).  When the claimant has demonstrated

that she suffers from an impairment that could reasonably be

expected to produce the symptoms or side effects she alleges, the

ALJ must then evaluate the intensity, persistence, and limiting

effects of those symptoms to determine the extent to which they

limit her ability to do basic work activities.

> [W]henever the individual's statements about the
> intensity, persistence, or functionally limiting
> effects of pain or other symptoms are not substantiated
> by objective medical evidence, the adjudicator must
> make a finding on the credibility of the individual's
> statements based on a consideration of the entire case
> record.  This includes medical signs and laboratory
> findings, the individual's own statements about the
> symptoms, any statements and other information provided
> by the treating or examining physicians or
> psychologists and other persons about the symptoms and
> how they affect the individual . . ..
>
> In recognition of the fact that an individual's
> symptoms can sometimes suggest a greater level of
> severity of impairment than can be shown by the
> objective medical evidence alone, 20 C.F.R. 404.1529(c)
> and 416.929(c) describe the kinds of evidence,
> including the factors below, that the adjudicator must
> consider in addition to the objective medical evidence
> when assessing the credibility of an individuals'
> statements.

SSR 96-7p, Policy Interpretation Ruling Titles II and XVI:

Evaluation of Symptoms in Disability Claims: Assessing the

Credibility of an Individual's Statements, 1996 WL 374186 (July

2, 1996).  Those factors include the claimant's daily activities;
the location, duration, frequency, and intensity of the
claimant's pain or other symptoms; factors that precipitate and
aggravate the symptoms; the type dosage, effectiveness, and side
effects of any medication the claimant takes (or has taken) to
alleviate pain or other symptoms; and any measures other than
medication that the claimant receives (or has received) for
relief of pain or other symptoms.  Id.  See also Avery, 797 F.2d
at 23; 20 C.F.R. § 404.1529(c)(3).

        It is, however, the ALJ's role to assess the credibility of
claimant's asserted inability to work in light of the medical
record, to weigh the findings and opinions of both "treating
sources" and other sources who have examined her and/or reviewed
her medical records, and to consider the other relevant factors
identified by the regulations and applicable case law.  Part of
his credibility determination necessarily involves an assessment
of a claimant's demeanor, appearance, and general "believability"
- factors which, given the nature of its review, this court lacks
the ability to assess.  Accordingly, if properly supported, the
ALJ's credibility determination is entitled to substantial
deference from this court.  See, e.g., Irlanda Ortiz, 955 F.2d at
769 (holding that it is "the responsibility of the [Commissioner]

to determine issues of credibility and to draw inferences from
the record evidence.  Indeed, the resolution of conflicts in the
evidence is for the [Commissioner] not the courts").

Here, in reaching the conclusion that claimant's testimony
about the disabling nature of her impairments was not entirely
credible, the ALJ considered the inconsistencies between
claimant's assertion (in February of 2008) that she was only
working about one hour per week, her testimony at the
administrative hearing that she was working approximately four
hours per week, and her employment records, which showed that she
was working roughly 8 to 20 hours per week during the calendar
years 2008 through 2009.  As the ALJ observed, such
inconsistencies in claimant's testimony (and in forms submitted
in connection with her applications for benefits) shed light on
her overall credibility.

The ALJ also considered the fact that there was no evidence
that claimant's employer found it necessary to provide her with
any special accommodations or that the work she provided was
worth anything less than what she was being paid.  He also noted
that claimant has provided "very significant care for her child,"
Admin. Rec. at 14, which included making frequent trips to Boston

14

for various assessments and applying for various grants to assist with his care.  See, e.g., Id. at 596.  See also Id. at 277 (claimant's Function Report, in which she describes her ability to perform household chores, do grocery shopping, and drive her son to school); Id. at 596-97 (statement by mental health counselor Victoria McDonald, observing that claimant's work in taking care of her son "seems to require far more effort than a 40 hour week at a job" and noting that claimant "was still unable to accept that her level of activity is far higher than she perceives").

In light of the foregoing, the court cannot conclude that the ALJ erred in making his assessment of claimant's credibility. To be sure, there is substantial evidence in the record supportive of claimant's assertion that her depression and anxiety make life quite difficult for her.  Importantly, however, there is also substantial evidence in the record to support the ALJ's conclusion that she remains capable of performing a range of work and, therefore, is not totally disabled.  In such circumstances - when substantial evidence can be marshaled from the record to support either the claimant's position or the Commissioner's decision - this court is obligated to affirm the Commissioner's finding of no disability.  See Tsarelka, 842 F.2d

at 535 ("[W]e must uphold the [Commissioner's] conclusion, even
if the record arguably could justify a different conclusion, so
long as it is supported by substantial evidence."); Andrews v.
Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("We must uphold
the ALJ's decision where the evidence is susceptible to more than
one rational interpretation."); Gwathney v. Chater, 104 F.3d
1043, 1045 (8th Cir. 1997) ("We must consider both evidence that
supports and evidence that detracts from the [Commissioner's]
decision, but we may not reverse merely because substantial
evidence exists for the opposite decision.") (citation and
internal punctuation omitted).


IV.  The ALJ's Residual Functional Capacity Assessment.

        Finally, claimant asserts that the ALJ erred in concluding
that she retains the functional capacity to perform a full range
of work at all exertional levels, subject to two non-exertional
limitations: that she is limited to performing no more than
simple routine tasks and that her employment can involve only
minimal contact with the public.  See Admin. Rec. at 12-13.
According to the claimant:

        [T]he ALJ's analysis of the evidence pursuant to the
        guidelines set forth in [SSR 96-8p] (and also 20 C.F.R.
        §§ 404.1545, 416.945) was flawed for reasons set forth
        in her legal argument presented above, i.e., the

> treating clinician's opinion regarding RFC was not
> properly weighed and the credibility assessment was
> flawed.  Because of these errors, the RFC assessment
> cannot be found valid.

Claimant's memorandum (document no. 10-1) at 24.  But, having

concluded that the ALJ's assessment of claimant's credibility and

his decision to discount the opinion of claimant's mental health

counselor, Ms. Leppanen Lerner, are well-supported in the record,

the court cannot conclude that he erred in determining claimant's

RFC.


### Conclusion

Having carefully reviewed the administrative record

(including the testimony of the claimant, the medical expert, and

the vocational expert), as well as the arguments advanced by both

the Commissioner and claimant, the court concludes that there is

substantial evidence in the record to support the ALJ's

determination that claimant was not disabled at any time prior to

the date of his decision.  His decision to discount the opinions

of claimant's mental health counselor, his assessment of

claimant's credibility, and his RFC determination are all

adequately supported by evidence in the record.

17

As is always the case in appeals of adverse benefits eligibility determinations, the court does not determine, de novo, whether claimant is disabled and entitled to benefits. This court's review is far more narrow: Is there substantial evidence in the record to support the ALJ's decision?  There is. Consequently, claimant's motion to reverse the decision of the Commissioner (document no. 10) is denied, and the Commissioner's motion to affirm his decision (document no. 11) is granted.

The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 23, 2012

cc:  Raymond J. Kelly, Esq.
     Gretchen L. Witt, AUSA